FRANK DEVESO, Respondent, v. JOHN W. CHANDLER, Appellant.

Fourth Department, November 12, 1924.

Sales — action by buyer for breach of contract of sale of potatoes to be shipped from Virginia to Buffalo — contract stipulated price f. o. b. point of shipment — contract shows " contrary intent " under Personal Property Law, § 127, and " agreement otherwise " under Personal Property Law, § 123, not to pay for potatoes at point of shipment — custom may be proven to show that delivery to carrier and payment were not to be concurrent — implication relating to delivery and to payment provided by Personal Property Law, §§ 123 and 127, may, under Personal Property Law, § 152, be negatived by custom — existence of custom question for jury — payment and delivery were not concurrent and defendant is in default.

In an action by a buyer to recover damages for breach of a contract of sale of potatoes to be shipped from Virginia to Buffalo, which was made by correspondence, the contract, which stipulated the price per barrel f. o. b. point of shipment, shows a " contrary intent " within the meaning of section 127 of the Personal Property Law and an " agreement otherwise " within the meaning of section 123 of the Personal Property Law that the delivery to the carrier and the payment for the goods were to be concurrent, and it evidences an agreement that the payment was not to be made until after the receipt of the goods at Buffalo and an inspection.

Evidence of a custom known to both parties whereby, under the facts of the case, payment for the potatoes was to be made after inspection on board the cars on their arrival in Buffalo, was admissible to show that the plaintiff was not required to pay for the potatoes or tender payment at the time of their delivery to the carrier. Such custom does not have the effect of varying the terms of the written contract inasmuch as it covers a point on which the contract itself was silent.

Moreover, the terms that delivery and payment are concurrent attach by implication to a contract of sale under section 123 of the Personal Property

Law only where it is not otherwise agreed and under section 127 of the Personal Property Law only where a contrary intent does not appear, and, since the usage became a part of the contract as though it were written therein, the implication contained in said sections cannot operate.

Furthermore, the implications contained in said sections 123 and 127 of the Personal Property Law may, under the provisions of section 152 of the Personal Property Law, be negatived or varied by custom, if the custom be such as to bind both parties to the contract.

Whether the custom alleged in this case was reasonable, uniform, well settled, and either known to the parties when the contract was made or was generally known so as to raise a presumption that they had it in mind was, under the evidence, a question for the jury.

Since the payment for the potatoes was not, under the contract and the usage proved, to be concurrent with the delivery of the potatoes f. o. b. at the point of shipment, the defendant defaulted in performing his agreement by not shipping the potatoes to Buffalo and will be held liable in damages for that default.

APPEAL by the defendant, John W. Chandler, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 22d day of July, 1921, upon the verdict of a jury rendered by direction of the court, certain questions of fact having been submitted to the jury, and also from an order entered in said clerk's office on the 22d day of July, 1921, denying the defendant's motion for a new trial made upon the minutes, with notice of intention to bring up for review an order entered in said clerk's office on the 15th day of February, 1921, denying the defendant's motion to dismiss the complaint.

*Larkin & Company,* Plaintiff, v. *John W. Chandler,* Defendant, was, on stipulation made in open court, tried with the above-entitled case and a verdict was rendered by direction of the court in favor of the plaintiff but the record on appeal does not contain the judgment entered therein nor a notice of appeal therefrom. However, the parties stipulated that the argument upon the appeal in the above-entitled case would apply to both cases and that the decision in the above-entitled case should have the same force as though made in *Larkin & Company* v. *Chandler.*

*Desbecker, Fisk, Newcomb & Block* [*Walter C. Newcomb* of counsel], for the appellant.

*Bartholomew & Bartholomew* [*A. G. Bartholomew* of counsel], for the respondent.

CROUCH, J.:

The actions are to recover damages for failure to deliver potatoes. After certain preliminary correspondence, plaintiff Deveso wrote defendant a letter, of which the following is the operative part:

"I hereby contract for myself (FRANK DEVESO) Six (6) cars U. S. Grade Number One Potatoes, heavy pack, in Standard

Stave Barrels, at $5.50 per barrel, F. O. B. cars, shipment June 21st, 1920, one car daily.

" Also I hereby contract for the Larkin Company four (4) cars U. S. Grade Number One Potatoes heavy pack, in Standard Stave Barrels, at $5.50 per barrel, F. O. B. cars, shipments June 21st, June 24th, June 28th, July 1st, 1920. These cars to be shipped and billed direct to the

" Larkin Company

" Larkin Terminal Warehouse

" Erie Switch,

" Buffalo, N. Y.     *   *   *

" Please confirm the above and oblige,

" Yours very truly,

" FRANK DEVESO."

Defendant answered as follows:

"'Exmore, Va.,

" *March* 22, 1920.

" Mr. Frank Deveso,

" Buffalo, N. Y.:

" Dear Sir.— Your favor of the 19th to hand and noted. Replying to same will say that I have booked your order for six cars of potatoes for your own use; same to be shipped one car per day, commencing June 21st; also four cars for the Larkin Co., one car June 21st, one car June 24th, one car June 28th, one car July 1st, and I judge that you wish contracts sent to them to cover same, but before doing so will await your reply.

" Very truly yours,

" J. W. CHANDLER."

Deveso replied by saying, in substance, that defendant might send on the contracts for signature. The contracts were never sent, and the potatoes were never delivered. It is admitted that on the dates specified for delivery to the carrier, neither plaintiffs nor any one in their behalf were at Exmore, Va. Plaintiffs made no tender or offer of performance on their part, except that under date of June 24, 1920, Deveso wired defendant as follows:

" Have you shipped cars potatoes due me June 21st, 22nd, 23rd, 24th. If you have not shipped I will buy on·open market and charge you difference. Answer quick."

Plaintiffs' were ready, able and willing to pay at Buffalo on arrival of cars after inspection. Defendant was ready, able and willing to deliver to the carrier on the delivery days, provided he was paid.

The original complaints alleged that the parties " entered into an agreement in writing whereby it was mutually agreed between

them that the defendant should sell and deliver to the plaintiff six carloads of potatoes,   \*   \*   \*   f. o. b. cars at Exmore, Virginia, \*   \*   \*   and that the plaintiff should accept the same from the defendant and pay the purchase price upon delivery thereof; the same to be consigned and shipped to the plaintiff at Buffalo, New York."

The complaints were by stipulation amended by inserting an allegation to the effect that at the times mentioned in the complaint, and for many years, it had been the uniform and well-recognized custom in sales of potatoes purchased for delivery f. o. b. cars at a foreign loading point, and consigned to Buffalo, where no terms of payment were specially agreed upon, that the same should be paid for on delivery at Buffalo after inspection on board cars on their arrival; and that the parties had contracted with knowledge of, and in conformity with, said custom.

The issue of act chiefly litigated at the trial was as to the existence and knowledge by the parties of the custom. On this question the jury, by a special verdict, found that there was such a custom, and that defendant knew it. Judgments accordingly were directed for plaintiffs.

The contention of appellant, in substance, is that the agreement between the parties is to be found only on the face of the written correspondence; that evidence of usage was not admissible; and that even though it was, the evidence given was insufficient to warrant the finding of the jury; and then, invoking the well-settled general rules that delivery to a carrier is delivery to the buyer, and that delivery and payment, unless otherwise agreed, are concurrent conditions, appellant asserts that, as respondents did nothing by way of tender or notice to put him in default, the actions may not be maintained.

There are two possible answers to that contention.

1. The first accepts the contract solely as it appears on the face of the correspondence, and without the assistance of the alleged usage.

When it is said that delivery to a carrier is delivery to the buyer, it is recognized in law as a special kind of delivery not having all the incidents of delivery into the buyer's hands. (2 Williston Sales [2d ed.], § 448a.)

Where the delivery is to a carrier at a distant point, the general rule that delivery and payment are concurrent conditions, conflicts with the rule, sustained by the weight of authority, that the buyer has the right to inspect the goods before acceptance at the place of destination, unless the contract precludes such right. (*Pierson* v. *Crooks*, 115 N. Y. 539; *Whitney* v. *McLean*, 4 App. Div. 449, 455;

*Plumb* v. *Hallauer & Sons Co.,* 145 id. 20, 25; 2 Williston Sales [2d ed.], §§ 448, 448a.) Upon this point Williston on Sales (2d ed. p. 1111) quotes from the case of *Biddell Brothers* v. *Clemens Horst Co.* (L. R. [1911] 1 K. B. 214; Id. 934, 949), decided under sections of the English Sale of Goods Act in substance identical with sections 123, 127 and 128 of the Personal Property Law, as follows: " The general rule  *  *  *  is payment against inspected goods; and this is simple enough where both parties and the goods are together in the same place. But when goods are shipped from across seas, the contract becomes complicated by the fact that the delivery, although not complete until acceptance, commences on a c. i. f. contract on shipment,  *  *  *.  But the buyer's acceptance and duty to pay *is not on shipment.*"

The contract here was f. o. b. Exmore, " cars to be shipped and billed direct to the Larkin Company, Larkin Terminal Warehouse, Erie Switch, Buffalo, N. Y." The implication would seem to be that plaintiffs were not expected to be at Exmore to take full and actual delivery and to pay, but that defendant was him elf to ship the cars to Buffalo; and the contract interposed no obstacle to the right of inspection there before payment. Both the " contrary intent " and the " agreement otherwise " which prevent the operation of the general rules prescribed by the Personal Property Law, sections 127 and 123, appear under the facts here.

2. But in any event there was here evidence of a usage known to both parties, whereby, under the facts involved, payment was to be made after inspection on board cars on their arrival in Buffalo. If that evidence was admissible and sufficient, it added another term to the contract, which expressly negatives any possibility of payment and delivery at Exmore being concurrent conditions.

We think such evidence was admissible. A concise statement of the general rule may be found in Anson on Contracts (2d Am. [Huff 1907] ed. p. 328): " The usage of a trade or of a locality may be proved, and by such evidence a term may be annexed to a written contract  *  *  *.  Parol evidence of a usage which adds a term to a written contract is admissible on the principle that — ' There is a presumption that in such transactions the parties did not mean to express in writing the whole of the contract by which they intended to be bound, but to contract with reference to those known usages.' " (See, also, 1 Cornell Law Quarterly, 276; 2 Williston Cont. § 648 *et seq.*)

Appellant contends that the rule is not applicable in this case, for various reasons, all of which may in substance be reduced to this: That the agreement to deliver f. o. b. Exmore, Va., carried with it by implication an agreement that such delivery was delivery

to the buyer, and that payment was concurrent with delivery; and this being the contract, evidence of a usage to pay at Buffalo after inspection varied the contract and the rights and obligations of the parties thereunder.

Many authorities are cited, but the most pertinent are *Hopper* v. *Sage* (112 N. Y. 530, 535) and *Hart* v. *Cort* (165 App. Div. 583).

In the *Hopper* case the court says: " Usage and custom cannot be proved to contravene a rule of law or to alter or contradict the express or implied terms of a contract  *  *  *  other than they are by the terms thereof. When the terms of the contract are clear and unambiguous and valid, they must prevail, and no evidence of custom or usage can be permitted to change them."

The prevailing opinion in *Hart* v. *Cort* (at p. 584) says: " That custom may not be shown to contradict the express terms of a contract is conceded. Is it competent to contradict those terms which attach to it by implication of law? I think, both on principle and authority, this question must be answered in the negative."

And again on page 587: " Where there is neither ambiguity nor failure to express completely the terms of *a* contract and the rights of the parties are fixed by law, no custom may be shown."

The decision in the latter case was by a divided court. For comment thereon see 1 Cornell Law Quarterly, 276, and 28 Harvard Law Review, 639; and compare 2 Williston on Contracts, section 651 *et seq.* We think the cases cited are not authorities under the facts here. The test of repugnancy is said to be " whether or not the custom, if written into the contract, will make it insensible or inconsistent." If the alleged usage here that payment was to be made after inspection on arrival at Buffalo had been written into the contract, it would not have rendered it insensible or inconsistent. It would merely have added a provision covering a point upon which the contract was silent.

Moreover, the terms relating to delivery and to payment, upon which appellant is standing, attach by implication only where it is not otherwise agreed (Pers. Prop. Law, § 123), or where a contrary intent does not appear. (Pers. Prop. Law, § 127.) But if the parties contracted with reference to a uniform usage, known and recog·nized by them, it is as much a part of the contract as are the other terms stated in the letters. There is then no room for the operation of the implied terms.

Finally, section 152 of the Personal Property Law (as added by Laws of 1911, chap. 571), which was not in existence when *Hopper* v. *Sage* (*supra*) was decided, and was not referred to in the opinion in *Hart* v. *Cort* (*supra*), expressly provides that " where any right,

44

duty or liability would arise under a contract to sell or a sale *by implication of law*, it may be negatived, or varied by express agreement or by the course of dealing between the parties, *or by custom, if the custom be such as to bind both parties to the contract or the sale.*"

Whether the usage here alleged was reasonable, uniform, well settled and either known to the parties when the contract was made or so generally known as to raise a presumption that they had it in mind (*Cassin* v. *Stillman, Delehanty-Ferris Co.*, 185 App. Div. 63, 65) was under the evidence a question for the jury. (*Vail* v. *Rice*, 5 N. Y. 155; *Dickinson* v. *City of Poughkeepsie*, 75 id. 65; *Scott* v. *Brown*, 29 Misc. Rep. 320; 17 C. J. 461, 462.)

In the view here taken, payment and delivery f. o. b. Exmore were not concurrent; and as defendant entirely defaulted in performing his part of the agreement, we are of the opinion that the proof made by plaintiffs of readiness and ability to perform was sufficient. Indeed, the telegram under date of June 24, 1920, was probably equivalent to notice.

The judgments and orders appealed from should be affirmed, with costs.

HUBBS, P. J., CLARK and DAVIS, JJ., concur; TAYLOR, J., not sitting.

In each case, judgment and order affirmed, with costs.